UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | | |
|---|---|---|
| RICHARD SAPIENZA, | § | CIVIL ACTION NO. |
| INDIVIDUALLY AND/OR | § | |
| DERIVATIVELY AS MEMBER AND | § | |
| MANAGER OF ADVANCED APPLIED | § | JUDGE |
| RESEARCH, LLC | § | |
| | § | |
| Plaintiffs, | § | MAGISTRATE |
| | § | |
| VERSUS | § | |
| | § | |
| DAVID O. TRAHAN; BEN D. DAVIS; | § | |
| CHEM ADVANCES, LLC; ADVANCED | § | |
| APPLIED RESEARCH, LLC | § | |
| | § | |
| Defendants. | § | |

VERIFIED COMPLAINT FOR SEIZURE ORDER,
TEMPORARY RESTRAINING ORDER, INJUNCTIVE RELIEF,
DECLARATORY JUDGMENT, JUDICIAL DISSOLUTION, AND DAMAGES

NOW INTO COURT, through undersigned counsel, come Plaintiffs, Richard Sapienza

("Sapienza"), individually and/or derivatively as Member/Manager on behalf of Advanced

Applied Research, LLC ("AAR") (collectively referred to herein as "Plaintiffs") to file their

Verified Complaint for Seizure Order, Temporary Restraining Order, Injunctive Relief,

Declaratory Judgment, Judicial Dissolution, and Damages ("Verified Complaint") and, towards

that end, respectfully aver as follows:

**PARTIES**

1.

Made Plaintiff herein is Richard Sapienza ("Sapienza"), a person of the full age of

majority, who is domiciled in the Parish of Lafayette, State of Louisiana.  Sapienza appears

individually, on behalf of himself.  Sapienza also appears as a Member and Manager, and on

behalf, of the Plaintiff, Advanced Applied Research, LLC, with authority to file this Verified Complaint and seek the relief sought herein pursuant to Louisiana Revised Statute 12:1365, and Louisiana Code of Civil Procedure Article 611.

2.

In accordance with Louisiana Code of Civil Procedure Article 615, Sapienza specifically (a) alleges that he was a Member and Manager of AAR at all times relevant to the allegations made the basis of this Verified Complaint, and their occurrences and transactions; (b) alleges that he expended considerable effort to secure from the other, two Members and Managers of AAR the enforcement of the rights he asserts here, as alleged with particularity herein; (c) alleges that he failed to secure such enforcement because the two other Members made numerous fraudulent, intentional, and negligent misrepresentations to hide their extensive, significant self-dealing, and, when discovered, they (admittedly) would not negotiate, either at all or in good faith; and (d) verifies the allegations made herein via this Affidavit.

3.

Made Plaintiff herein is Advanced Applied Research, LLC ("AAR"), a limited liability company organized and formed under the laws of the State of Louisiana via Articles of Organization and an inaccurate Initial Report filed with the Louisiana Secretary of State on October 30, 2015, by its Organizer, Kay A. Theunissen, a Louisiana licensed attorney. Since its formation, its Members have managed AAR, without a written Operating Agreement. Only days ago on December 4, 2016, its registered agent - David Trahan - filed an Annual Report for the period ending October 30, 2016. As stated on this Annual Report, AAR may be served with process via its registered agent, David Trahan, at 1424 S. Hugh Wallis Road, Lafayette, Louisiana 70508.

4.

Made Defendant herein is Chem Advances, LLC ("CA"), a limited liability company organized and formed under the laws of the State of Louisiana via Articles of Organization and an Initial Report filed with the Louisiana Secretary of State on December 9, 2015 (only forty days after AAR), by its Organizer, Kay A. Theunissen, the same Louisiana licensed attorney who organized AAR.  According to the Articles of Organization and Initial Report, its Members - Tarrytown Ventures, LP ("Tarrytown Ventures") and Cypress Technologies, LLC ("Cypress Technologies") - manage CA.  Only days ago on December 4, 2016, its registered agent - David Trahan - filed an Annual Report for the period ending December 9, 2016.  As stated on this Annual Report, CA may be served with process via its registered agent, David Trahan, at 101 Settlers Trace, Apt. 2405, Lafayette, Louisiana 70508.

5.

Made Defendant herein is David Trahan ("Trahan"), a person of the full age of majority, who is domiciled in the Parish of Lafayette, State of Louisiana, at 101 Settlers Trace, Apt. 2405, Lafayette, Louisiana 70508, in accordance with the Annual Reports filed by him only days ago on December 4, 2016, on behalf of AAR and CA.  Trahan is one of three Members and Managers of AAR (along with Sapienza and Davis), and one of two Members of CA (along with Davis).  Trahan is named as a Defendant in his individual capacity, and as a Member and Manager of AAR.

6.

Made Defendant herein is Ben Davis ("Davis"), a person of the full age of majority, who is domiciled in the County of Travis, State of Texas, at 3400 Foothill Terrace, Austin, Texas, 78731, in accordance with the Annual Reports filed on December 4, 2016, on behalf of AAR and

CA.  Davis is one of three Members and Managers of AAR (along with Sapienza and Trahan), and one of two Members of CA (along with Trahan).  Davis is named as a Defendant in his individual capacity, and as a Member and Manager of AAR.

7.

Made Defendant herein is AAR, the same entity as made Plaintiff in Paragraph 2 above, as required by Louisiana Code of Civil Procedure Article 615(3) & (4).

## JURISDICTION

8.

This Court has original, subject matter jurisdiction pursuant to the Defend Trade Secrets Act, 18 U.S.C. § 1836(c) ("DTSA"); as well as Supplemental Jurisdiction pursuant to 28 U.S.C. § 1367(a).

9.

This Court has personal jurisdiction over the Defendants.  AAR and CA are limited liability companies formed and existing under the laws of the State of Louisiana.  Trahan is domiciled in the State of Louisiana.  Davis has, and has had, minimum contacts with the State of Louisiana sufficient to establish both general and specific jurisdiction, as alleged in detail herein.

## VENUE

10.

This Court has venue pursuant to 28 U.S.C. § 1391(b) for Trahan, CA, and AAR, as residents of this district; for Davis due to his being subject to personal jurisdiction in this district; and for all Defendants because a substantial part of the events or omissions giving rise to the claim occurred and a substantial part of property that is the subject of the action is situated here.

## ADVANCED APPLIED RESEARCH, LLC

11.

AAR is a limited liability company organized and formed under the laws of the State of Louisiana via Articles of Organization and an (inaccurate) Initial Report filed with the Louisiana Secretary of State on October 30, 2015, by its Organizer, Kay A. Theunissen, a Louisiana licensed attorney who represented AAR by virtue of these filings.  AAR's Initial Report inaccurately fails to identify any Members, and identifies only one Manager, Trahan.  Instead, the Initial Report should have identified Sapienza, Trahan, and Davis as the Members and Managers of AAR.

12.

Since its formation, the registered office of AAR has been located at 1424 S. Hugh Wallis Road, Lafayette, Louisiana 70508, immovable property believed to be owned by 1424 Partners, LLC, a Louisiana limited liability company with two Members - Trahan and Davis. AAR seeks injunctive relief that Trahan and Davis not evict it in retaliation for filing the captioned matter, which also would be in violation of the duties owed by Trahan and Davis to AAR.

13.

 Although (as is typical) AAR's Articles of Organization state its purpose to be "engaging in any lawful activity," Sapienza, Trahan, and Davis agreed to form AAR more specifically for the purpose, and with the intent, of researching, inventing, developing, testing, marketing, producing, distributing, licensing, and selling its and Sapienza's chemical and process technology for use and application in agricultural, industrial, oil & gas, and other markets involved in interstate and foreign commerce.

14.

As Members and Managers, Sapienza, Trahan, and Davis each received a one-third-membership interest and shared in the management responsibilities.  Those shared management responsibilities can be generally described as Sapienza overseeing the "science and technology" (i.e. researching, inventing, developing, and testing the chemical and process technologies) as well as the day-to-day operations of this aspect of the business; Trahan overseeing the "business" end, as well as marketing and sales; and Davis also overseeing marketing and sales, as well as securing additional sources of funding.

15.

Since its formation, its Members have managed AAR, without a written Operating Agreement.  AAR issued an Employee Handbook effective January 2016 to all of its employees, who should have signed an acknowledgment of, and agreement to, its terms, for which Trahan would have been responsible as part of his management responsibilities.  The Employee Handbook contained a "Welcome" letter from Sapienza, Trahan, and Davis as "Managing Member[s]."  In the Annual Report filed by Trahan as Registered Agent and Member on December 4, 2016 for the period ending October 30, 2016, Trahan identified the three Members as "members/managers for the company."

16.

As Members and Managers, Sapienza, Trahan, and Davis each made capital contributions.  Sapienza made a capital contribution of one hundred twenty thousand dollars ($120,000) in cash.  Sapienza also contributed his services in the form of his labor in running the day-to-day operations of AAR on-site for the "science and technology" aspects of the business.  Sapienza also contributed his education, experience, and expertise as a chemist with a Bachelor

of Science in Chemistry from SUNY, a Master of Science in Organic Chemistry from the University of Texas, and a PhD in Inorganic Chemistry from the University of Texas, as well as decades of experience in researching, inventing, developing, and testing chemical and process chemicals for many industries.  More importantly, Sapienza contributed his previously and separately researched, invented, developed, tested, and owned trade secrets before the formation of AAR.

17.

Trahan claims to have made a capital contribution of approximately four hundred eight thousand dollars ($408,000) in cash.  Similarly, Davis claims to have made a capital contribution of approximately three hundred eleven thousand dollars ($311,000) in cash.  However, based partially upon the accounting accompanying the Memorandum in Support of the Motion for injunctive and related relief being filed after this Verified Complaint, the Plaintiffs have reason to believe that the actual amount of the capital contributions made by Trahan and Davis are much less because their claimed contributions went to entities and/or persons other than AAR.

18.

Within days of AAR's formation, on or about November 1, 2015, Sapienza, Trahan, and Davis identified AAR's "target" chemical and process technologies to be researched, invented, developed, tested, marketed, produced, distributed, licensed, and sold, including, but not limited to, a low temperature breaker, improved clay controller, flow back aid, paraffin wax treatment, and gas phase hydrogen sulfide methodology.  Within days thereafter, on or about November 4, 2015, Trahan prepared a list of products for AAR.  Upon formation, and since, Sapienza proceeded with researching, inventing, developing, and testing the chemical and testing

technologies agreed upon; and running the day-to-day operations of this aspect of the business of AAR.

## CHEM ADVANCES, LLC

### 19.

Unbeknownst to Sapienza and AAR, only forty (40) days after the formation of AAR, Trahan and Davis surreptitiously caused a separate, competing entity - CA - to be formed on December 9, 2015, for their sole, personal, financial benefit; in competition with AAR; to divert opportunities from AAR to CA; and to tortiously interfere with AAR's contracts - all in violations of their statutory and jurisprudential fiduciary duties of good faith, diligence, care, judgment, skill, loyalty, and not to engage in self-dealing.  In so doing, Trahan and Davis acted in a fraudulent, grossly negligent, and/or intentional manner with respect to their duties and obligations owed to AAR, thereby subjecting them statutorily to liability personally, both to AAR and Sapienza, and negating their entitlement statutorily to indemnification by AAR.  These and other acts and omissions of Trahan and Davis warrant judicial dissolution of AAR pursuant to Louisiana Revised Statute § 12:1335 because "it is not reasonably practicable to carry on the business in conformity with the articles of organization" or their agreement to operate AAR.

### 20.

Specifically, only forty (40) days after the formation of AAR, on December 9, 2015, Trahan and/or Davis caused Theunissen (the same Louisiana licensed attorney who signed AAR's Articles of Organization and (inaccurate) Initial Report as its "Organizer") to sign and file with the Louisiana Secretary of State the Articles of Organization and an Initial Report for CA, also as its Organizer.  The Articles of Organization and Initial Report identified Trahan as its registered agent, and Tarrytown Ventures and Cypress Technologies as its two Members.

Tarrytown Ventures is a Texas domestic limited partnership formed in 2004 by Davis.  Cypress Technologies is a Louisiana limited liability company formed in 2003, whose sole Member and Manager is Trahan.  Thus, Trahan and Davis solely own and control CA via two of their previously-formed and closely-held entities.

21.

Since its formation, the registered office of CA has been located at, and operated from, the same address as AAR; namely, 1424 S. Hugh Wallis Road, Lafayette, Louisiana 70508, immovable property owned by 1424 Partners, LLC, a Louisiana limited liability company with only two Members - Trahan and Davis.

22.

As he did for AAR, on December 4, 2016, Trahan also filed an Annual Report for CA, as its Registered Agent and Member, but for the period ending December 9, 2016.  Trahan again identified the two Members - Tarrytown Ventures and Cypress Technologies - as the "members/managers for the company."

23.

As will be alleged further herein below, neither Trahan nor Davis disclosed to Sapienza, or properly to AAR, the formation of CA.  When the existence of CA came to be known, Trahan and Davis intentionally, fraudulently, expressly, and repeatedly misrepresented to Sapienza and AAR that CA was a "sales and marketing" part or division of AAR formed for that purpose and for its benefit.  It was not until early August 2016 that Trahan and Davis disclosed to Sapienza and AAR for the first time that CA, in fact, was not a part or division of AAR and, instead, was owned by them, personally and separately.  At this point, Trahan and Davis started to freeze and

push out Sapienza from the rights and fruits of his membership interest in AAR and to convert its and Sapienza's very valuable chemical and process technology trade secrets.

### THE CHEMICAL AND PROCESS TECHNOLOGY TRADE SECRETS

24.

After formation, Sapienza commenced with researching, inventing, developing, testing the chemical and process technologies "targeted" by him, Trahan, and Davis at their meeting on November 1, 2015, and enumerated on the products list created by Trahan on November 4, 2015, as alleged in Paragraph 18 above.  Sapienza, Trahan, and Davis agreed that these chemical and process technologies would not be patented and, instead, would be kept as trade secrets in order to protect them from disclosure and increase their value.

25.

Specifically, after formation of AAR, Sapienza researched, invented, developed, and tested the chemical processes and technologies listed, which belong either to him or AAR, as indicated:

(a) **Choline Chloride Trade Secrets:**  These are water soluble biopolymers chemically engineered to replace salt-based and other polymer-based clay control products.  Basically, they inhibit water-hydration of swelling clays and prevent dispersion of clay solids, which can be of paramount importance in drilling, fracking, and similar operations, to companies like Balchem Corporation.  These Choline Chloride Trade Secrets include Clay Control Enhancer, Clay Control Concentrate, and Advanced Clay Control.  Sapienza researched, invented, developed, tested, and owned the Choline Chloride Trade Secrets previously and separately before the formation of AAR.  As such, Sapienza owns them now.

(b) **Hydrogen Peroxide Trade Secrets:**  These are hydrogen peroxide enhancers to improve control in the breaking of polymer viscosifying agents.  Basically, they improve the viscosity (i.e. liquidity) of fluids at lower concentrations and/or temperatures of hydrogen peroxide in certain applications, such as well-control. These include the Breaker LT105 Concentrate and Low Temperature Breaker Activator.  Sapienza researched, invented, developed, tested, and owned the Hydrogen Peroxide Trade Secrets previously and separately before the formation of AAR.  As such, Sapienza owns them now.

(c) **Carbon Disulfide Solvent Trade Secrets:**  An on-site process and safe series of chemicals to be used with a typical acid to produce a carbon disulfide solvent to dissolve and remove paraffin deposits from oil wells and flow lines.  This trade secret reduces the amount of current solvents needed in applicable applications by up to seventy percent (70%), and also possesses the unique ability to "activate" much further down hole or in-pipe than other technologies on the market. Sapienza researched, conceived, developed, and supervised the testing of the Carbon Dilsulfide Trade Secrets.  As such, Sapienza owns them now.

(d) **Flow Aid Blend Trade Secrets:**  A chemical part of a Gemini surfactant that exponentially increases the flow between two liquids, or a liquid and a solid. Basically, surfactants lower the surface tension between two liquids or between a liquid and a solid, and typically possess a hydrophobic tail and hydrophilic head. The Gemini-type surfactant possesses two hydrophobic tails and hydrophilic heads, making them more surface-active.  An employee of AAR played the major role in researching, developing, and testing this trade secret.   Sapienza assisted. AAR owns this trade secret.

(e) **Hydrogen Sulfide Trade Secrets**:  The research, development, and testing of this trade secret was ongoing by Sapienza and AAR employees when Trahan and Davis locked and pushed him out in early September 2016.  This trade secret involves tweaks to Triazine, the main chemical used to scavenge for hydrogen sulfide.  AAR owns this trade secret.

26.

The chemical processes and technologies enumerated and described in Paragraph 25 are valuable trade secrets, protected by federal and state law, and involved in interstate and foreign commerce.  Therefore, they are governed and protected by the Defend Trade Secrets Act, 18 U.S.C. 1836, and Louisiana Uniform Trade Secrets Act, La. Rev. Stat. 51:1431, *et. seq*.  They have been and will be misused and misappropriated by Trahan, Davis, and CA as alleged herein. By way of example, but by no means limitation, Trahan and/or Davis caused CA to issue its own Product Data Sheets for certain of the trade secrets enumerated above including Clay Control 532C, Advanced ClayControl, Breaker LT 105 Concentrate, Flow Control PS300, Flow Control PS305, and Parasolv.

27.

The Employee Handbook issued by AAR effective January 2016, in its Confidential Information section, established "[AAR] policy [to] protect the integrity of the company's proprietary and confidential information as well as the proprietary and confidential information of others."  Furthermore, it imposed "the [r]esponsibility of all [AAR] Associates to safeguard sensitive company information" and emphasized that the "nature of our business and the economic well-being of our company is dependent upon protecting and maintaining proprietary company information."  AAR disseminated the Employee Handbook to all of its employees who should have signed an acknowledgment of, and agreement to, its terms, for which Trahan would have been responsible as part of his management responsibilities.

28.

Specifically with respect to "[c]ompany trade secrets," the Employee Handbook issued by AAR effective January 2016, in its Confidential Information section, provided,

> [AAR] policy requires that all Associates protect the integrity of the company's proprietary and confidential information as well as the proprietary and confidential information of others.  It is the responsibility of [AAR] Associates to safeguard sensitive company information.  The nature of our business and the economic well being of our company is dependent upon protecting and maintaining proprietary company information.  Continued employment with the company is contingent upon compliance with this policy.  Each company supervisor/manager bears the Responsibility for the orientation and training of his or her Associates to ensure enforcement of company confidentiality.  Any and all company information, including trade secrets or confidential information relating to products, processes, know-how, customers, designs, drawings, formulas, test data, marketing data, accounting, pricing or salary information, business plans and strategies, negotiations and contracts must remain company private and confidential...

> Company trade secrets or confidential information should never be transmitted or forwarded to outside individuals or companies not authorized to receive that information, and should not even be sent or forwarded to Associates inside the company who do not have a need to know the information...

Associates who improperly use or disclose trade secrets or confidential business information may be subject to disciplinary action, up to and including termination and legal action.

## THE INTERTWINING OF AAR AND CA
## AND SELF-DEALING OF TRAHAN AND DAVIS

29.

In marked contrast to Sapienza, after formation of AAR, both Trahan and Davis commenced towards advancing their own interests, via CA, at the expense of AAR and Sapienza.  Trahan did so by simultaneously being intimately involved in the day-to-day operations of CA and by taking advantage of his authority and responsibilities as a Member and Manager of AAR to create and allow certain internal control weaknesses to further their purposes including, but not limited to, a lack of segregation of duties, physical safeguards, independent checks, proper authorizations, proper documents; overriding existing controls; and an inadequate accounting system.

30.

Starting in 2015, Trahan and/or Davis misappropriated and misused a Choline Chloride Trade Secret when they created a "CONFIDENTIAL MEMO" on CA letterhead entitled "Market Strategy (Draft)" for the "Product: Clay Control 532 ('CC 532')," which set forth "Objective Statement[s]" to sell certain quantities in the first three quarters of 2016 and identified nineteen (19) "Sales Targets."  The "Clay Control 532 ('CC 532')" product made the basis of this "Market Strategy (Draft)" for CA is one of the three Choline Chloride Trade Secrets invented and owned by Sapienza.

31.

On December 21, 2015, Trahan and/or Davis admitted to diverting a business opportunity of AAR when they caused to be issued a Press Release from CA describing it as a "specialty

chemical company providing products into the oil & gas market" and announcing a "distribution agreement with Univar USA."  According to the Press Release, CA "and Univar will join efforts working closely to offer high performance, cost effective chemical products to service companies and operators in the oil & gas market."  The Press Release is from "Media Relations, Lucie Pyle," an employee of AAR.

32.

Trahan and Davis continued to pursue Univar in the New Year.  On February 1, 2016, Trahan sent a MEMO to the Executive Vice President of Business Development (Mani Ramesh); the Vice President of Global Mining (Sam Sutherland); the President for Europe, Middle East, and Africa (Chris Oversby); and the Vice President - Business Development, "Univar Upstream Magnablend"; at Univar, a global distributor of chemistry and related products and services.  The MEMO regarded "Clay Control 532 : Choline chloride replacement" and "proudly" announced the "launch of the Clay Control 532 ("CC 532") as a replacement for [c]holine chloride."  The "Clay Control 532 : Choline chloride replacement" product made the subject of this MEMO from CA to executives at Univar is one of the three Choline Chloride Trade Secrets invented and owned by Sapienza.  By May 26, 2016, Trahan confirmed, in writing, that Univar ordered one of the Choline Chloride Trade Secrets, presumably for the account of CA in light of its February 1, 2016, MEMO.  However, neither Trahan nor Davis obtained a non-disclosure, non-solicitation, or similar agreement from Univar.

33.

From the beginning, Trahan and Davis knew that their interests should not conflict with AAR's, and they expected the same of AAR's employees.  The Employee Handbook issued by AAR effective January 2016 with a "Welcome" letter from Trahan, Davis, and Sapienza

14

contained a Conflict of Interest provision.  Even by this time, Trahan and Davis already violated

the Conflict of Interest provision by the creation of CA, the Confidential Memo regarding the

Choline Chloride Trade Secret, and the Press Release regarding the distribution agreement with

Univar.  The Conflict of Interest section of the Employee Handbook states, in pertinent part, that,

> No Associate of [AAR] shall maintain an outside business or financial interest, or
> engage in any outside business or financial activity, whether as an officer,
> director, shareholder (other than the holder of less than five percent of a publicly
> traded company), partner, or otherwise, which conflicts with the interests of the
> company, or which interferes with his or her ability to fully perform essential job
> responsibilities.

> No [AAR] Associate shall engage in the same or a similar line of business or
> research as that conducted by the company.  An Associate shall not have a
> financial interest in a company that is a competitor of or a supplier to the
> company.  Financial interests held by an Associate or by his or her immediate
> family members in such companies are to be disclosed immediately to [AAR].

34.

Trahan and Davis also misappropriated and misused one of the Hydrogen Peroxide Trade

Secrets for their and CA's benefit.  On March 2, 2016, CA issued a Product Information brochure

on its letterhead for Breaker LT 105 "[b]y Vanessa Madrid," who is identified as a "Sr. Research

Scientist."  Madrid was an employee of AAR.  Days thereafter, on March 8, 2016, Trahan posted

a request on AAR's internal communications system - projecturf.com - for "the physical

properties of the Breaker LT 105 Concentrate" so he can "work on writing up a product data

sheet."  One of AAR's employees exchanged replies with Trahan on the subject.  The Breaker LT

105 made the basis of the March 2, 2016 Product Information brochure and the March 8, 2016,

request from Trahan to AAR employees, and subsequent replies, is one of the Hydrogen

Peroxide Trade Secrets invented and owned by Sapienza.

35.

Trahan, Davis, and CA also misappropriate and misused the trade secret technology for

the benefit of themselves and their close friends, especially Wayne Cutrer ("Cutrer") and his related entity, Downhole Chemical Solutions ("DSC").  The nature of DCS' business is the same as, or similar to, that of AAR and CA.  Starting as early as the first week of March 2016, Trahan and Davis disclosed the trade secrets of Sapienza and AAR to Cutrer and/or DCS without non-disclosure agreements, or any reasonable protections, in place, and without payment for services rendered and/or staff resources used.  Sapienza immediately expressed concern to Trahan and Davis, who dismissed him.  Sapienza continued to express concerns the same concerns to Trahan and Davis for months, well into August, and they continued to dismiss him.  In mid-August 2016, Sapienza even pointed out to Trahan that the Choline Chloride Trade Secrets appeared on the website of DCS, which Trahan attempted to explain-away.  Finally, on August 23, 2016, the day after Sapienza met with Theunissen, the attorney whom he believed to represent AAR, he told Trahan of his belief that it was "necessary and vital to have a formal agreement with [DCS] regarding AAR."

36.

Throughout 2016, Trahan and Davis drained resources from AAR by consuming its employees' time and talents for their use and benefit.  For instance, on July 15, 2016, Trahan, on behalf of CA and with the assistance of an AAR employee, presented a Clean Water Proposal to Clarence Triche and Adrian Rios of Clean Waste, LLC, a Louisiana limited liability company whose sole Manager is Gary Chouest.  AAR researched, developed, and tested chemical and process technologies, starting as early as March 2016, for this proposal.  However, instead of presenting this proposal on behalf of AAR, Trahan instead usurped the opportunity for himself and Davis via CA.

16

37.

From January through late August 2016, Trahan and Davis misrepresented to Sapienza, AAR, and its employees that AAR and CA were "one company using two names for different divisions."  In other words, Trahan and Davis misrepresented to Sapienza, AAR, and its employees that CA was a part or division of AAR, not a separately formed and owned entity. Trahan and Davis contributed to the confusion by changing some employees' email addresses from @realadvances.com to @chemadvances.com, with the explanation that CA is "part of the [AAR] business."

38.

From approximately February 2016 until August 2016, Sapienza repeatedly asked Trahan and Davis about the relationship between AAR and CA.  Trahan and Davis consistently and expressly responded that they're the same company, with CA being a part of AAR.

39.

On or about August 2, 2016, communications regarding one of the Hydrogen Peroxide Trade Secrets caused Sapienza again to question Trahan and Davis about its relationship with AAR.  Approximately three days later, on or about August 5, 2016, Trahan, with Davis' acquiescence, for the first time admitted that CA and AAR are two, separate entities.  For the first time, that same day, this prompted Trahan to send a MEMO on AAR letterhead to AAR Associates to request each to sign and return a Non Disclosure Agreement.  This discovery also compelled Sapienza to attempt to protect AAR's trade secrets by limiting their access on Egnyte and Projecturf, cloud-based file sharing and project management software, respectively, at AAR.

40.

Sapienza and Trahan, copying Davis, subsequently exchanged emails on August 6 and 7,

2016.  In his initial writing to Trahan on August 6, 2016, Sapienza confirmed their conversation the day before, in which he learned for the first time (1) that he had "no ownership or rights from [CA]"; (2) that Trahan espoused "[CA] should buy out AAR"; and (3) that Trahan asked Sapienza to "spin off" a separate entity with only "methanol and more"; amongst other matters. Otherwise, Sapienza also questioned "AAR...doing work for the benefit of [CA] but...not directly [being] reimbursed" and request a "clear accounting."

41.

Trahan responded, at length, later that day, in an email designated as an "FRE 408 Communication."  Therein, Trahan failed to address the fundamental issue/problem of his (and Davis') creation and ownership of CA, and its competition with AAR, for their benefit.  Trahan otherwise made a "tentative proposal to purchase [Sapienza's] interest in AAR," and explained away this obvious freeze-out by saying "it would take a newco because I wish to keep it separate from CA/AAR in order to avoid any further confusion on efforts and costs."  No doubt Trahan would.

42.

The next day, Sapienza rejected Trahan's proposal, again inquired of the separate creation and ownership of CA by Trahan and Davis, and pointed out CA's drain of AAR' resources in the form of employee time, business opportunity, and unprotected disclosure of trade secrets.  On September 8, 2016, Trahan and Davis locked out Sapienza from Egnyte and Projecturf, the main research and development tools for AAR, thereby forcing him out.

**THE USURPED OPPORTUNITY WITH BALCHEM CORPORATION**

43.

Plaintiffs contend that the final straw of greed that broke the camel's back involved the

expressed intent of Balchem Corporation ("Balchem") to acquire the Choline Chloride Trade Secrets invented and owned by Sapienza.  Balchem is a corporation with global operations for specialty and industrial products of the kind being researched, invented, developed, and tested for AAR.

44.

Starting by mid March 2016, Sapienza used his contacts and experience to create an opportunity for AAR to market and sell the Choline Chloride Trade Secrets to Balchem.

45.

Towards that end, as would be reasonable and prudent of a Member and Manager, and in accordance with the provisions of the Employee Handbook issued by AAR effective January 2016, he first sought and obtained a Mutual Nondisclosure and Non-Solicitation Agreement between AAR and Balchem ("Balchem NDA"), which was signed and entered April 1, 2016.

46.

Sapienza and AAR employees comply with, and enforce, the terms of the Balchem NDA, such as before sending requested samples in mid-April 2016.

47.

On or about August 17, 2016, representatives of Balchem, including David Ludwig, the VP & General Manager of Specialty & Industrial Products, visited the offices of AAR for the purpose of discussing possible licensing, acquisition, and similar opportunities.  Trahan and Sapienza met with Balchem and made a presentation.  The presentation showed that the Choline Chloride Trade Secrets could increase margins for Balchem from a little less than twelve percent to between thirty-one and forty-three percent.  Similarly, the presentation showed that the Choline Chloride Trade Secrets could increase earnings from approximately $5.5 million to $18-

22 million.  While there, Balchem expressed an interest to acquire the Choline Chloride Trade Secrets, and to pay a retainer to AAR for further research and development.

48.

Less than a week later, on August 22, 2016, Trahan himself admitted to Theunissen, in writing, via email, that this opportunity with Balchem was "a really big deal for the company," and estimated it to be "potentially worth over $2 million per year in revenue to AAR."

49.

On August 30, 2016, Sapienza followed up with Ludwig at Balchem regarding the meeting and learned that Trahan called Ludwig the day before.  Ludwig related that Trahan offered a "non-exclusive license with little or no upfront fee" rather the "interest...in an exclusive or full ownership position" as expressed at the August 17, 2016, meeting.

50.

Within an hour of receiving Sapienza's email on August 30, 2016, Ludwig wrote to clarify that "Trahan may have misunderstood [his] comments."  While Balchem "would be open to look at various options," such as the "different licensing agreements" suggested by Trahan, "the end game would be for Balchem to control the technology for all markets."  He expressly asked, "[w]hat are you willing to sell it for...[w]ho owns the technology...[w]ho will we be negotiating a deal with"?  He also mentioned the importance of the "raw material supply" and inquired about "the relationship between AAR and [CA], between [] Trahan and [Sapienza]."

51.

The August 30, 2016, email exchange between Sapienza and Ludwig revealed that Trahan contacted Balchem for the purpose of usurping the opportunity for himself and/or CA.  It subsequently came to light that CA entered into an the Exclusivity Agreement effective two days

later with GPC, the only "raw material suppl[ier]" in the United States of a key component of the Choline Chloride Trade Secrets.

### AAR'S COUNSEL'S "CONFLICT"

52.

In early to mid August 2016, after learning the truth about CA and being unable to persuade Trahan and Davis to fulfill their obligations, Sapienza asked to meet with Theunissen, the Louisiana licensed attorney who filed the Articles of Organization and Initial Report for AAR as its Organizer, and whom he believed represented AAR.

53.

In advance of their meeting, Theunissen sent a "rough draft" of an Operating Agreement "drafted back in late 2015." The draft contained contradictory provisions regarding "Management Decisions," in Section 8.01 providing that "Member(s) agree to mutually undertake the responsibilities for management" and "shall have proportionate rights in the management of the LLC," whilst in Section 8.03 stating that "Ben D. Davis and David O. Trahan are hereby designated as Managers for the LLC until removed or replaced by Member(s) holding a majority ownership interest in the LLC."

54.

When Sapienza and Theunissen met, in person, on August 24, 2016, Theunissen represented to Sapienza that she did not represent AAR, and could not do so due to a conflict with representing Trahan and Davis on other matters, but that she did prepare and review documents for Trahan. At the time, Sapienza did not know that Theunissen also filed the Articles of Organization and Initial Report for CA as its Organizer. Had he known of this conflict, he may not have met with her and discussed his concerns, or at least could have made

an informed decision regarding whether to meet with her.  In this regard, Sapienza questions whether Trahan and/or Davis initially duped Theunissen into filing the Articles of Organization and Initial Reports for both AAR and CA, thereby putting her into a very difficult position as a licensed attorney with respect to the conflicts that arose therefrom.

55.

In a summary of their meeting prepared by Thuenissen and sent to Sapienza, Trahan, and Davis, she contradictorily said she could not "represent or advance anyone's individual interest in this matter."

56.

Plaintiffs contend that Theunissen had a professional obligation to disclose fully her conflict and obtain informed consent, in writing, to waive the conflict, before proceeding. Failure to do so disqualifies her from representing any party in the captioned matter.

**ATTEMPTED FREEZE-OUT**

57.

Thereafter, Trahan and Davis increased efforts to freeze-out Sapienza and force him to accept one of their self-serving proposals to resolve their dispute.

58.

Towards this end, Trahan threatened that, "[a]s [Sapienza] presumably learned [from Theunissen] recently, under Louisiana law, members within an LLC without an operating agreement make decisions by majority vote[, with e]ach member get[ting] one vote to cast on matters formally brought before the members."  Trahan seemingly failed to recognize that, in self-dealing and similar transactions for limited liability companies, the votes of interested members do not count.

59.

Towards this end, Trahan also warned that he did not "have a duty to negotiate in good faith" and he "may discontinue negotiations at any time for any reason or no reason."

60.

Not long thereafter, Sapienza, and Trahan and Davis, retained separate counsel, exchanged communications regarding possible resolutions, and met on October 4, 2016.  But, all was to no avail.

61.

Sapienza turns to this Court for relief, to seize the trade secrets, enjoin the Defendants, get a declaratory judgment, and be awarded damages, on behalf of himself and as Member and Manager on behalf of AAR.

## COUNT ONE - THE DEFEND TRADE SECRETS ACT (18 U.S.C. § 1836), AND ALTERNATIVELY, THE LOUISIANA UNIFORM TRADE SECRETS ACT

62.

Plaintiffs re-aver and re-allege Paragraphs 1 through 61 of this Verified Complaint as though set forth in support of their claims under the Defend Trade Secrets Act, 18 U.S.C. § 1836 ("DTSA"), and, alternatively, the Louisiana Uniform Trade Secrets Act, found at La. Rev. Stat. § 51:1431, *et seq.* ("LUTSA").

63.

The DTSA provides a private right of action to the owner of misappropriated trade secret that "is related to a product or service used in, or intended for use in, interstate or foreign commerce."

64.

The Choline Chloride Trade Secrets, Hydrogen Peroxide Trade Secrets, Carbon Disulfide

Trade Secrets, Flow Aid Blend Trade Secret, and Hydrogen Sulfide Trade Secrets are "trade secrets" involved in interstate and foreign commerce as defined by the DTSA (collectively referred to as the ("Sapienza/AAR Trade Secrets").  Sapienza and AAR, who own the trade secrets, took reasonable measures to keep them secret.  The Sapienza/AAR Trade Secrets derive independent economic value from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information.

65.

Trahan, Davis, and CA willfully, maliciously, and in bad faith, misappropriated the Sapienza/AAR Trade Secrets by (a) acquiring them by improper means; (b) disclosing and using them without express or implied consent.

66.

Trahan, Davis, and CA owe compensatory and exemplary damages, and reasonable attorney fees, to Sapienza and AAR under the DTSA.  Alternatively, in lieu of damages that cannot be measured by any other methods, a reasonable royalty should be imposed for the unauthorized disclosure of the Sapienza/AAR Trade Secrets by Trahan, Davis, and CA.

67.

Similarly, and alternatively, the Sapienza/AAR Trade Secrets are "trade secrets" as defined by the LUTSA.  Thus, Trahan, Davis, and CA owe damages and reasonable attorney fees to Sapienza and AAR under the LUTSA due to their willful and malicious misappropriation of the Sapienza/AAR Trade Secrets.

## COUNT TWO - LOUISIANA UNFAIR TRADE PRACTICES ACT ("LUTPA")

68.

Plaintiffs re-aver and re-allege Paragraphs 1 through 67 of this Verified Complaint as though set forth in support of their claims under the Louisiana Unfair Trade Practices Act, found at La. Rev. Stat. § 51:1401, *et seq*. ("LUTPA").

69.

The LUTPA makes unlawful unfair methods of competition and deceptive acts or practices in the conduct of trade or commerce.

70.

The LUTPA creates a private right of action for anyone who suffers an ascertainable loss of money or movable property as a result of unfair trade practices.  Sapienza and AAR suffered ascertainable losses as a result of the unfair methods of competition and deceptive acts and practices of Trahan, Davis, and CA in the conduct of trade or commerce.  The acts and omissions of Trahan, Davis, and CA not only offended public policy, but also were fraudulent, deceptive, unethical, immoral, oppressive, unscrupulous, egregious, and substantially injurious. Consequently, Sapienza and AAR can recover their actual damages from Trahan, Davis, and CA under the LUTPA.

71.

Furthermore, Trahan, Davis, and CA knowingly used unfair methods of competition and deceptive acts.  Consequently, Sapienza and AAR can recover three times their actual damages from Trahan, Davis, and CA pursuant to the LUTPA.

72.

In addition, Sapienza and AAR should be awarded their reasonable attorney fees and

costs incurred in being forced to bring this action against Trahan, Davis, and CA pursuant to the LUTPA.

### COUNT THREE - BREACHES OF DUTIES OF FIDUCIARY DUTIES OF GOOD FAITH, DILIGENCE, CARE, JUDGMENT, SKILL, LOYALTY, AND NOT TO ENGAGE IN SELF-DEALING

73.

Plaintiffs re-aver and re-allege Paragraphs 1 through 72 of this Verified Complaint as though set forth in support of their claims that Trahan and Davis violated their fiduciary duties of good faith, diligence, care, judgment, skill, loyalty, and not to engage in self-dealing.

74.

Under Louisiana law, Trahan and Davis, as Members and Managers of AAR (a Member managed limited liability company without a written Operating Agreement) owed both to AAR and Sapienza the fiduciary duties of good faith, diligence, care, judgment, skill, loyalty, and not to engage in self-dealing.  Trahan and Davis repeatedly and extensively violated these fiduciary duties in the grossly-negligent manners alleged thoroughly herein, which include, but are not limited to, (a) failing to contribute their promised and represented capital contributions and/or diverting and converting those funds to other entities, ventures, businesses, opportunities, et cetera; (b) creating a separate, competing entity - CA - within forty (40) days of the formation of AAR; (c) fraudulently failing to disclose the existence of CA to AAR or Sapienza; (d) intentionally and fraudulently misrepresenting to AAR and Sapienza the ownership, business, and nature of CA when its existence became known; (e) misappropriating, misusing, and failing to protect the Sapienza/AAR Trade Secrets for the benefit of themselves and CA, to the exclusion of and damage to Sapienza and AAR; (f) by usurping business opportunities from AAR including, but not limited to, those with Balchem, Univar, Clean Waste, as well as others to

be proven at the injunction hearing, during discovery, and at trial; (g) by causing CA to enter into an Exclusivity Agreement with the only raw material supplier in the United States of a key component of the Choline Chloride Trade Secrets; (h) by violating the Conflict of Interest and other provisions of the Employee Handbook of AAR effective January 2016; (i) by attempting to freeze out Sapienza; (j) by forcing out Sapienza from the premises of AAR; and by (k) other acts and omissions to be proven at the injunction hearing, during discovery, and at trial.

75.

The acts and omissions of Trahan and Davis that constitute breaches of their fiduciary duties also negate their entitlement to statutory indemnification by AAR, and warrant judicial dissolution of AAR because "it is not reasonably practicable to carry on the business in conformity with the articles of organization" or their agreement to operate AAR.

76.

The acts and omissions of Trahan and Davis that constitute breaches of their fiduciary duties caused damage to Sapienza and AAR, for which Trahan and Davis are liable.

**COUNT FOUR - BREACH OF CONTRACT (BAD FAITH)**

77.

Plaintiffs re-aver and re-allege Paragraphs 1 through 76 of this Verified Complaint as though set forth in support of their claims that Trahan and Davis breached their contractual obligations in bad faith.

78.

Sapienza, Trahan, and Davis obligated themselves to form and operate AAR in a certain manner and for certain purposes, in compliance with Louisiana law.

79.

The acts and omissions of Trahan and Davis alleged herein breached their obligations to Sapienza and AAR, in a bad faith manner.  These bad faith breaches of the obligations owed by Trahan and Davis to Sapienza and AAR caused injury and damages.  Trahan and Davis are liable to Sapienza and AAR to compensate them for these damages, both foreseeable and unforeseeable being in bad faith.

### COUNT FIVE - FRAUD

80.

Plaintiffs re-aver and re-allege Paragraphs 1 through 79 of this Verified Complaint as though set forth in support of their claims that Trahan and Davis committed fraud.

81.

Fraud is a misrepresentation or a suppression of the truth made with the intention either to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other, and may result from silence or inaction.

82.

Trahan and Davis repeatedly and extensively misrepresented and suppressed the truth about many matters both to Sapienza and AAR, with the obvious and admitted intentions to obtain an unjust advantage for themselves and CA, and to cause a loss or inconvenience to Plaintiffs.  Those misrepresented and suppressed truths that constitute fraud are alleged in detail with particularity herein.  Trahan and Davis are liable to pay damages to Sapienza and AAR for the injuries and losses resulting from this fraud.

## COUNT SIX - INTENTIONAL AND NEGLIGENT MISREPRESENTATION

83.

Plaintiffs re-aver and re-allege Paragraphs 1 through 82 of this Verified Complaint as though set forth in support of their claims that Defendants expressly, repeatedly, and extensively made intentional and negligent misrepresentations to Sapienza and AAR, which are alleged in detail with particularity herein.

84.

The express, repeated, and extensive intentional and negligent misrepresentations made by Trahan and Davis caused injury and loss to Sapienza and AAR.  Thus, Trahan and Davis are liable to pay damages to Sapienza and AAR for the injuries and losses resulting from these intentional and negligent misrepresentations.

## COUNT SEVEN - DETRIMENTAL RELIANCE

85.

Plaintiffs re-aver and re-allege Paragraphs 1 through 84 of this Verified Complaint as though set forth in support of their claims against Trahan, Davis, and CA for detrimental reliance.

86.

Sapienza and AAR obligated themselves based upon promises and representations from Trahan, Davis, and CA, who made such representations knowing they would induce Sapienza and AAR to rely upon them.  Sapienza and AAR reasonably relied, to their detriment, upon the promises and representations made by Trahan, Davis, and CA.

87.

The reasonable reliance of Sapienza and AAR upon the promises and representations

made by Trahan, Davis, and CA caused them to incur expenses and suffer damages.  Trahan, Davis, and CA are liable to pay Sapienza and AAR these expenses and damages.

## COUNT EIGHT - CONVERSION

88.

Plaintiffs re-aver and re-allege Paragraphs 1 through 87 of this Verified Complaint as though set forth in support of their claims against Trahan, Davis, and CA for conversion.

89.

Conversion is a distinct act of dominion wrongfully exerted over another's property in denial of or inconsistent with the owner's rights therein.  Sapienza and AAR never gave consent to CA to possess the Sapienza/AAR Trade Secrets.  Sapienza and AAR terminated any consent given to Trahan and Davis to possess the Sapienza/AAR Trade Secrets, and demanded return of them.  Trahan and Davis refused.

90.

Trahan, Davis, and CA converted the Sapienza/AAR Trade Secrets, which caused injury and damage to Sapienza and AAR.  Thus, Trahan, Davis, and CA are liable to pay damages to Sapienza and AAR.

## COUNT NINE - AGAINST TRAHAN AND DAVIS INDIVIDUALLY FOR FRAUD, MALFEASANCE, CRIMINAL WRONGDOING AND BREACH OF PERSONAL DUTY OWED

91.

Plaintiffs re-aver and re-allege Paragraphs 1 through 90 of this Verified Complaint as though set forth in support of their claims that liability can be imposed upon Trahan and Davis individually as Members and Managers of AAR for fraud, malfeasance, criminal wrongdoings, and breach of personal duty owed.

92.

Trahan and Davis, as Members and Managers of AAR, incurred personal liability for the debts of AAR by committing fraud, malfeasance, criminal wrongdoings, and owing personal duties towards the Plaintiffs, the breach of which specifically caused damages.  Courts disregard the non-liability of corporate officers when they owe a personal duty to the Plaintiffs, in particular to allow the victim of a tort to recover from a liquid defendant.  Here, much financial gain, probably millions of dollars, were diverted and converted to Trahan and Davis, who appear to be much liquid than AAR.

93.

Trahan and Davis committed fraud, fraud, malfeasance, and criminal wrongdoings, and breached their personal duties towards the Plaintiffs, in the manners alleged in detail with particularity herein.  These acts and omissions of Trahan and Davis caused injuries and damages to Sapienza and AAR.  Trahan and Davis are liable to Sapienza and Davis for these damages.

## COUNT TEN - TORTIOUS INTERFERENCE WITH A CONTRACT

94.

Plaintiffs re-aver and re-allege Paragraphs 1 through 93 of this Verified Complaint as though set forth in support of their claims against Trahan and Davis for their tortious interference with contracts, including, but not limited to, for Balchem and Univar.

95.

Louisiana recognizes tortious interference with a contract when (1) a contract or legally protected right exists between the Plaintiffs and the limited liability company; (2) the Member or Manager has knowledge of the contract or interest; (3) the Member or Manager intentionally induces or causes the limited liability company to breach its contract or interest, or intentionally

renders its performance impossible or more burdensome; (4) there is an absence of justification; and (5) causation of damages to the Plaintiffs by breach of the contract or difficulty of its performance brought about by the Member or Manager.

96.

Trahan and Davis tortiously interfered with the contracts and interests of AAR with respect to Balchem, GPC, and Univar.  Their interference caused injury and damage to Sapienza and AAR.  Thus, Trahan and Davis are liable to pay damages to Sapienza and Davis.

## COUNT ELEVEN - FOR JUDICIAL DISSOLUTION AND, ALTERNATIVELY, FOR BUY-OUT AND/OR DISSOLUTION DUE TO OPPRESSION

97.

Plaintiffs re-aver and re-allege Paragraphs 1 through 96 of this Verified Complaint as though set forth in support of their claim that AAR should be judicially dissolved pursuant to La. Rev. Stat. § 12:1335.  A Member of a limited liability company may apply to a court of competent jurisdiction for a decree of dissolution whenever it is not reasonably practicable to carry on the business in conformity with the articles of organization or operating agreement.

98.

Alternatively, and solely at Sapienza's discretion regarding whether to pursue, due to the oppression of Sapienza by Trahan and Davis, they should buy-out his membership interest at fair value, determined in part by expert opinion, pursuant to Louisiana Revised Statute § 12:1-1435 in the Louisiana Business Corporation Act.  Sapienza reserves the right not to proceed with this claim, and instead to seek judicial dissolution pursuant to the limited liability company statutes.

99.

The acts and omissions of Trahan and Davis as alleged herein in detail with particularity obviously and conclusively establish that it is no longer reasonably practicable to carry on the

business of AAR in conformity with its Articles of Organization.  AAR never had a written Operating Agreement.

100.

Thus, Sapienza, as Member and Manager of AAR, seeks a judicial dissolution of AAR, a winding up of its affairs, and a distribution of its assets.

**COUNT TWELVE - DECLARATORY JUDGMENT**

101.

Plaintiffs re-aver and re-allege Paragraphs 1 through 100 of this Verified Complaint as though set forth in support of their request for a declaratory judgment pursuant to 22 U.S.C. 2201 and Rule 57 of the Federal Rules of Civil Procedure.

102.

Sapienza and AAR seek a declaratory judgment that he should serve as the sole Manager of AAR, due to his ownership and/or control and knowledge of the Sapienza/AAR Trade Secrets, and as its only disinterested Member who has not engaged in extensive self-dealing in violation of fiduciary duties.  Sapienza also seeks a declaratory judgment that he owns the Choline Chloride Trade Secrets, the Hydrogen Peroxide Trade Secrets, and the Carbon Disulfide Trade Secrets.  Finally, Sapienza seeks a declaratory judgment that AAR owns the Flow Aid Blend Trade Secrets and the Hydrogen Sulfide Trade Secrets.

**COUNT THIRTEEN - CIVIL SEIZURE UNDER THE DEFEND TRADE SECRETS ACT**

103.

Plaintiffs re-aver and re-allege Paragraphs 1 through 102 of this Verified Complaint as though set forth in support of their attempt to seize the trade secrets under the Defend Trade Secrets Act, 18 U.S.C. § 1836.

33

104.

Under the DTSA, an owner of a trade secret that is misappropriated may bring a civil action to seize and/or enjoin the further disclosure of that trade secret if the trade secret is related to a product or service used in, or intended for use in, interstate or foreign commerce.

105.

The DTSA empowers the Court to seize trade secrets upon *ex parte* application, in extraordinary circumstances, when necessary to prevent the propagation or dissemination of the trade secret.  Although the allegations made herein demonstrate extraordinary circumstances sufficient to support an *ex parte* application, Sapienza and AAR nevertheless attempted to notify Trahan, Davis, CA, and their known counsel, via email and phone of their filing this Verified Complaint and their seeking civil seizure under the DTSA, as set forth more fully in the Declaration of counsel to accompany the related filings.

106.

An order of Civil Seizure may be ordered when

(I)      an order issued pursuant to Rule 65...would be inadequate to achieve [its] purpose...because the party to which the order would be issued would evade, avoid, or otherwise not comply with such an order;

(II)     an immediate and irreparable injury will occur if such seizure is not ordered;

(III)    the harm to the applicant of denying the application outweighs the harm to the legitimate interests of the person against whom seizure would be ordered of granting the application and substantially outweighs the harm to any third parties who may be harmed by such seizure;

(IV)     the applicant is likely to succeed in showing that—

        (aa)    the    information    is    a    trade    secret;    and

        (bb)    the person against whom seizure would be ordered—

       (AA)   misappropriated the trade secret of the applicant by improper                            means,                            or

       (BB)   conspired to use improper means to misappropriate the trade secret of the applicant;

(V)    the person against whom seizure would be ordered has actual possession of...the trade secret; and any property to be seized.

(VI)   the application describes with reasonable particularity the matter to be seized and, to the extent reasonable under the circumstances, identifies the location where the matter is to be seized;

(VII)  the person against whom seizure would be ordered, or persons acting in concert with such person, would destroy, move, hide, or otherwise make such matter inaccessible to the court, if the applicant were to proceed on notice to such person; and

(VIII)  the applicant has not publicized the requested seizure.

107.

Sapienza and AAR in this Verified Complaint and its accompanying Affidavit satisfy the statutory requirements set forth above to obtain a Order seizing the Sapienza/AAR Trade Secrets.

108.

An Order issued pursuant to Rule 65 would be inadequate because Trahan, Davis, and CA would evade, avoid, or otherwise not comply.  The allegations made herein - verified by sworn Affidavit - show that Trahan, Davis, and CA for quite some time have consciously, purposefully, intently, consistently, and repeatedly disregarded the statutory and jurisprudential laws of the State of Louisiana and the United States government (some of which may subject them to criminal liability) by misappropriating and misusing the Sapienza/AAR Trade Secrets for their personal benefit.  Sapienza and CA contend that Trahan, Davis, and CA disregarding these laws so egregiously reasonably evidences that they would disregard Rule 65 of the Federal Rules of Civil Procedure.

109.

Sapienza and AAR will suffer immediate and irreparable injury if the Sapienza/AAR Trade Secrets are not seized.  Sapienza and AAR establish their invention and ownership of the Sapienza/AAR Trade Secrets, as well as the past and present (ongoing) acts and omissions of Trahan, Davis, and CA in misappropriating and misusing the Sapienza/AAR Trade Secrets for their benefit.  The misappropriation and misuse of trade secrets constitute irreparable injury.

110.

The harm to Sapienza and AAR of denying the Order seizing the Sapienza/AAR Trade Secrets far outweighs the harm to any legitimate interests of Trahan, Davis, and CA by granting the relief requested, and also substantially outweighs the harm to any third parties who may be harmed by such seizure.

111.

Sapienza and AAR prove the Sapienza/AAR Trade Secrets to be trade secrets under the definitions in the DTSA (and LUTSA).  Furthermore, again, Sapienza and AAR establish their invention and ownership of the Sapienza/AAR Trade Secrets, as well as the past and present (ongoing) acts and omissions of Trahan, Davis, and CA in misappropriating and misusing the Sapienza/AAR Trade Secrets for their benefit.

112.

Sapienza and AAR also show that Trahan, Davis, and CA actually possess the Sapienza/AAR Trade Secrets, as well as the property where they are kept, which will be seized.

113.

Sapienza and AAR describe with reasonable particularity the matters to be seized, as well as their location, as follows:

From the offices of AAR, Trahan, Davis, and CA located at 1424 South Hugh Wallis Road, Lafayette, Louisiana, 70508, the United States Marshal should seize the items listed below, which Defendants should have no problem identifying and releasing by cooperation because they have misappropriated and misused these trade secrets for some time and continue to do so:

(a)      The computers of AAR, Trahan, Davis, and CA including, but not limited to, desktops, laptops, notebooks, and iPads, as well as any, other, similar electronic or digital device that contains information regarding the Chloride Trade Secrets, the Hydrogen Peroxide Trade Secrets, the Carbon Disulfide Trade Secrets, the Flow Aid Blend Trade Secrets, and the Hydrogen Sulfide Trade Secrets.

(b)      To the extent not included in (a), the files regarding the Chloride Trade Secrets, the Hydrogen Peroxide Trade Secrets, the Carbon Disulfide Trade Secrets, the Flow Aid Blend Trade Secrets, and the Hydrogen Sulfide Trade Secrets, in Projecturf (a cloud based project management tool) and Egnyte (an enterprise file-sharing cloud platform).

(c)      Any and all written documents that evidence all or part of the chemical and process technologies made the bases of the Chloride Trade Secrets, the Hydrogen Peroxide Trade Secrets, the Carbon Disulfide Trade Secrets, the Flow Aid Blend Trade Secrets, and the Hydrogen Sulfide Trade Secrets.

(d)      To the extent not included in (a), (b), and (c) above, any and all information stored on any medium evidencing all or part of the chemical and process technologies made the bases of the Chloride Trade Secrets, the Hydrogen Peroxide Trade Secrets, the Carbon Disulfide Trade Secrets, the Flow Aid Blend Trade Secrets, and the Hydrogen Sulfide Trade Secrets.

114.

Trahan, Davis, and CA would destroy, move, hide, or otherwise make such matter inaccessible to the court, if notice were given.  As alleged in Paragraph 104 above, Sapienza and AAR attempted to notify Trahan, Davis, CA, and their known counsel, via email and phone of their filing this Verified Complaint and their seeking civil seizure under the DTSA, as set forth more fully in the Declaration of counsel to accompany the related filings.  In addition, as alleged in Paragraph 107 above, Trahan, Davis, and CA disregarding the state and federal jurisprudential and statutory laws (some of which may impose criminal liability) so egregiously for so long,

reasonably evidences that they may destroy, move, hide, or otherwise make such matter inaccessible to the court, if notice were given.

115.

Neither Sapienza nor AAR have publicized the requested seizure of the Sapienza/AAR Trade Secrets.

116.

Therefore, Sapienza and AAR seek and Order civilly seizing the Sapienza/AAR Trade Secrets as set forth in the proposed Order being submitted to the Court with this Verified Complaint.

**COUNT FOURTEEN - INJUNCTIVE RELIEF**

117.

Plaintiffs re-aver and re-allege Paragraphs 1 through 116 of this Verified Complaint as though set forth in support of their attempt to obtain injunctive relief under the DTSA, Rule 65 of the Federal Rules of Civil Procedure, and/or the LUTSA.

118.

The DTSA further empowers the Court to grant an injunction as a remedy (1) preventing actual or threatened misappropriation on such terms as the Court deems reasonable, provided the Order does not prevent a person from entering into an employment relationship or otherwise conflict with an applicable State law prohibiting the restraints on the practice of a lawful profession, trade, or business; (2) requiring affirmative actions to be taken to protect the trade secret; and (3) in exceptional circumstances that render an injunction inequitable, conditioning future use of the trade secret upon payment of a reasonable royalty for no longer than the period of time for which such use could have been prohibited.

38

119.

To obtain a preliminary injunction under Rule 65 of the Federal Rules of Civil Procedure, a party must show: (1) a substantial likelihood of success on the merits; (2) a substantial threat that failure to grant the injunction will result in irreparable injury; (3) the threatened injury outweighs any damage that the injunction will cause to the adverse party; and (4) the injunction will not have an adverse effect on the public interest.

120.

Under the LUTSA, the Plaintiffs may obtain injunctive relief for either actual or threatened misappropriation of trade secrets upon a showing of irreparable loss or injury without an adequate remedy at law.

121.

The same allegations warranting the issuance of an Order civilly seizing the Sapienza/AAR Trade Secrets - namely, Paragraphs 25, and its subparts (a) through (e) - also warrant this Court granting preliminary and permanent injunctive relief.

**WHEREFORE,** after due proceedings are had, Plaintiffs, Richard Sapienza, individually and/or derivatively as Member/Manager on behalf of Advanced Applied Research, LLC, pray that their Verified Complaint be deemed good and sufficient; that there be judgment in their favor and against Defendants:

(i)     issuing an Order civilly seizing the Sapienza/AAR Trade Secrets pursuant to the DTSA;

(ii)    issuing an Order granting preliminary and permanent injunctive relief;

(iii)   issuing a declaratory judgment establishing the rights and obligations of the rights and obligations with respect to the formation, membership, and management of

AAR, as well as the ownership of the Sapienza/AAR Trade Secrets;

(iv)    issuing an Order judicially dissolving AAR, winding up its affairs, and distributing its assets;

(v)    awarding compensatory, general, special, and exemplary damages;

(vi)    awarding attorney fees and costs incurred in bringing this action;

(vii)    awarding judicial interest from the date of demand;

(viii)    setting a trial by jury on all issues so triable; and

(ix)    ordering and/or awarding any and all other just and equitable relief to which the Plaintiffs may be entitled.

Respectfully Submitted,

*/s/ Monique M. Lafontaine.*
Monique M. Lafontaine, T.A. (#24557)
Aaron J. Hurd (#34601)
MLaw – Monique Lafontaine, APLC
2237 N. Hullen Street, Suite 301
Metairie, Louisiana 70001
Telephone: 504-208-9975
Facsimile:  504-814-4308
monique@mlaw.law

and

Randy A. Smith (#2117)
J. Geoffrey Ormsby (#24183)
Smith & Fawer
201 St. Charles Avenue, Suite 3702
New Orleans, Louisiana 70170
Telephone: 504-525-2200
Facsimile:  504-525-2205
rasmith@smithfawer.com
gormsby@smithfawer.com

Attorneys for Plaintiffs,
Richard Sapienza, individually
and/or derivatively as Member/Manager
on behalf of Advanced Applied Research, LLC