## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
## LAFAYETTE DIVISION

| | | |
|---|---|---|
| RICHARD SAPEINZA, INDIVIDUALLY AND/OR DERIVATIVELY AS MEMBER AND MANAGER OF ADVANCED APPLIED RESEARCH, LLC, | § § § § | |
| Plaintiffs, | § § § | CIVIL ACTION NO.: 6:16-cv-01701 |
| v. | § § | JUDGE REBECCA F. DOHERTY |
| DAVID O. TRAHAN; BEN D. DAVIS; CHEM ADVANCES, LLC; AND ADVANCED APPLIED RESEARCH, LLC, | § § § § | MAGISTRATE JUDGE PATRICK J. HANNA |
| Defendants | § § | |

### BRIEF IN SUPPORT OF DEFENDANTS' JOINT MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION

Now into Court, through their undersigned counsel, come Defendants David O. Trahan; Ben D. Davis; Chem Advances, LLC; and Advanced Applied Research, LLC (collectively "Defendants"), who file this Brief in Support of Defendants' Joint Motion to Dismiss for Lack of Subject Matter Jurisdiction, in response to the Complaint of Plaintiff Richard Sapienza ("Sapienza").

### SUMMARY OF ARGUMENT

In their prior pocket brief to the Court, Defendants set out the general factual and legal principals applicable to the lack of jurisdiction. Doc. 6. Pursuant to those principals, and based on the specific analysis set forth herein, Plaintiff's claim brought pursuant to the Defend Trade Secrets Act ("DTSA") must be dismissed for failure to state a claim on which relief can be granted. Upon dismissal of that claim, no other claims in Plaintiff's Complaint (Doc. 1) create federal question jurisdiction and the entire case must be dismissed as a result.

1

FACTS AND BACKGROUND

For brevity, Defendants incorporate the factual and procedural background as set out in their joint pocket brief (Doc. 6), and will focus the present discussion only on the allegations relevant to this motion.

## I.   Trade Secret Ownership

Plaintiff's DTSA allegations are based on five very broadly and generally described alleged trade secrets Plaintiff claims are owned by AAR.  While Sapienza claims three of the trade secrets were developed by him individually, his ownership claim is completely contradicted by his allegation that he provided his know-how and previous developments in the field to AAR as part of his consideration for his 1/3 membership share in AAR.  Doc. 1 at ¶16. On the face of the Complaint Plaintiff, therefore, alleges AAR owns each of the five distinct trade secrets irrespective of the time or manner of their development.[1]

## II.   The Trade Secrets As Sapienza Defines Them

The Complaint, at ¶25(a-e), sets out Plaintiff's description of the five alleged trade secrets giving rise to Plaintiff's claims. Specifically, he claims rights to "Choline Chloride Trade Secrets"; "Hydrogen Peroxide Trade Secrets"; "Carbon Disulfide Solvent Trade Secrets"; "Flow Aid Blend Trade Secrets"; and "Hydrogen Sulfide Trade Secrets". Doc. 1 at ¶25(a-e).

Plaintiff alleges that the "processes and technologies enumerated and described in Paragraph 25 are valuable trade secrets, protected by federal and state law, and involved in interstate and foreign commerce." Doc. 1 at ¶26.

---

[1] While Defendants contest the veracity of the allegations and reserve the right to dispute the extent that trade secrets exists, as well as their scope, and AAR's ownership of any alleged trade secrets, all non-conclusory allegations pled in the Complaint must be taken as true for purposes of deciding the motion to dismiss.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 589, 127 S.Ct. 1955, 1985, 167 L.Ed.2d 929 (2007).

Plaintiff relies on very general details and concepts in describing the five alleged trade secrets.  For the listed "Choline Chloride Trade Secrets," as an example, the allegation generally describes the makeup ("water soluble biopolymers") and purpose of the product ("inhibit water-hydration of swelling clays and prevent dispersion of clay solids") and then lists specific product names ("Clay Control Enhancer, Clay Control Concentrate, and Advanced Clay Control"). Doc.1 at ¶ 25(a). The remaining alleged  "trade secrets" are based upon a nearly identical pattern of vague generalities. *Id.* at ¶ 25(b-e). Plaintiff does not identify particular formulas, documents, papers, research, emails, or evidence of development or testing that have been protected by Plaintiffs as trade secret information, nor has Plaintiff made any specific allegation about which information in the development, research, testing, or formulating process was marked or otherwise identified as secret or confidential until, allegedly, August 2016.

Product names are not trade secrets. *See* 18 U.S.C. § 1839(3). General product makeup is not a trade secret. *Id.* The purpose of various products is not a trade secret. *Id.* The only reasonable implication that can be made from the pleading is that Plaintiff intends to seek protection of the specific formulas related to each of these products and compounds. No other trade secrets are referenced or alleged anywhere in the Complaint.

### III.    The Alleged Misappropriations

In the Pocket Brief, Defendants described five alleged misappropriations from its review of the Complaint. *See* Doc. 6. In Plaintiff's pocket brief, he describes seven different alleged misappropriations. Doc. 7 at 8-10. Giving all deference to Plaintiff's reading of his own complaint, for argument purposes only, Defendants will discuss each of the seven identified by Plaintiff.

The seven alleged misappropriations are:

a) Issuance of Product Data Sheets from Chem Advances (not AAR) for certain of the chemical and process technology trade secrets, including 2 products included in the list of Choline Chloride Trade Secrets (Clay Control 532C and Advanced Clay Control), 1 product included in the list of Hydrogen Peroxide Trade Secret (Breaker LT 105 Concentrate), and 3 products not specifically or implicitly referenced in any of the lists (Flow Control PS300, Flow Control PS305, and Parasolv) (*See* Doc. 7 at 8(1) and Doc. 1 at ¶26);

b) Misuse of a 2015 marketing memo setting forth sales targets for a product made from the one of the alleged "Choline Chloride Trade Secrets" (*See* Doc. 7 at 8(2) and Doc. No. 1 at ¶ 30);

c) Diversion of a business opportunity in December 2015 by pursuing business with Univar, followed by a February 2016 Memo regarding a Choline Chloride Trade Secret, followed by issuance of a May 26, 2016 press release related to the joint efforts to work on chemical products and confirming an order of the compound to Univar (*See* Doc. 7 at 8(3) and Doc. No. 1 at ¶¶ 31-32);

d) Publication of a March 2016 brochure and use of the unrestricted AAR "internal communications system" to share unrestricted information about the Hydrogen Peroxide Trade Secrets (*See* Doc. 7 at 9(4) and Doc. No. 1 at ¶ 34);

e) Misuse by disclosure to close friend Wayne Cutrer and his company Downhole Chemical Solutions ("DSC") without a nondisclosure agreement in March 2016 and subsequent use by DSC by disclosure in August 2016 of Chloline Chlroide Trade Secrets (*See* Doc. 7 at 9(5) and Doc. No. 1 at ¶35);

f) Draining resources from AAR through employees time for their own benefit including presentation of a Clean Water Proposal to Clean Waste, LLC on July 15, 2016 which was made by Chem Advances instead of AAR (*See* Doc. 7 at 9(6) and Doc. No. 1 at ¶36); and,

g) Usurping an AAR opportunity to sell the Choline Chloride Trade Secrets to Balchem which Sapienza procured around March 2016. Specifically, Trahan offered terms not discussed at a meeting and ChemAdvances entered into a supply chain agreement with a material provider. ((*See* Doc. 7 at 9(7) and Doc. No. 1 at ¶¶43-51).

To the extent the Complaint can possibly seek relief under the DTSA, Sapienza's allegations are limited to the above five trade secrets and the above seven instances of misappropriation.

<u>**ARGUMENTS AND AUTHORITIES**</u>

As set out below, pursuant to the applicable law and authorities, none of the claims of misappropriation state a claim for which relief can be granted. Therefore, this Federal Court lacks subject matter jurisdiction over the case.

### I.    No Allegation of Misappropriation as to Three of the Five Alleged Trade Secrets

In order for a trade secret[2] to be misappropriated[3], improper means[4] of discovery or improper use or disclosure must have occurred. In the seven different specific instances of alleged misappropriation, not once does Plaintiff allege facts that support misappropriation of the Carbon Disulfide Solvent Trade Secrets; Flow Aid Blend Trade Secrets; or the Hydrogen Sulfide Trade Secrets. *See* Doc. 1. The allegations are specifically limited in nature to the improper use of the Choline Chloride Trade Secrets and Hydrogen Peroxide Trade Secrets. *See supra,* p. 4 at ¶¶ a–g.

---

[2]"[T]rade secret" includes "financial, business, scientific, technical, economic, or engineering information, including patterns, plans, compilations, program devices, formulas, designs, prototypes, methods, techniques, processes, procedures, programs, or codes…if-- **(A)** the owner thereof has taken reasonable measures to keep such information secret; and **(B)** the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information." 18 U.S.C.A. § 1839(3).

[3] "[M]isappropriation" includes --
    **(A)** acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or
    **(B)** disclosure or use of a trade secret of another without…consent by a person who--
        **(i)** used improper means to acquire knowledge of the trade secret;
        **(ii)** at the time of disclosure or use, knew or had reason to know that the knowledge of the trade secret was--
            **(I)** derived from or through a person who had used improper means to acquire the trade secret;
            **(II)** acquired under circumstances giving rise to a duty to maintain the secrecy… or limit the use of the trade secret; or
            **(III)** derived from or through a person who owed a duty to the person seeking relief to maintain the secrecy… or limit the use of the trade secret."
18 U.S.C.A. § 1839(5).

[4] "[I]mproper means" -- "**(A)** includes theft, bribery, misrepresentation, breach or inducement of a breach of a duty to maintain secrecy, or espionage through electronic or other means; and **(B)** does not include reverse engineering, independent derivation, or any other lawful means of acquisition." 18 U.S.C.A. § 1839(6).

Because the Carbon Disulfide Solvent Trade Secrets, Flow Aid Blend Trade Secrets, and the Hydrogen Sulfide Trade Secrets are not linked in any way in the Complaint to a single alleged misappropriation, Plaintiff has not stated a claim on which relief can be granted as to any of those alleged trade secrets.  To the extent Plaintiff seeks relief or recovery under the DTSA related to the Carbon Disulfide Solvent Trade Secrets, Flow Aid Blend Trade Secrets, or the Hydrogen Sulfide Trade Secrets, those allegations must be dismissed for failure to state a claim on which relief can be granted.

## II.    Several of the Alleged Misappropriations Allegedly Occurred Before the DTSA's Effective Date

The DTSA, signed into law May 11, 2016, creates a federal, private cause of action to "an owner of a trade secret that is misappropriated" if the trade secret is "related to a product or service used in, or intended for use in, interstate commerce." 18 U.S.C. § 1836(b)(1).

The DTSA applies only to acts of misappropriation that occur "after the effective date" of the statute. *Adams Arms, LLC v. Unified Weapon Sys., Inc.*, 8:16-CV-1503-T-33AEP, 2016 WL 5391394, at *5 (M.D. Fla. Sept. 27, 2016) (citing Pub. L. No. 114-153, § 2(e)).

Of Plaintiff's seven distinct alleged misappropriations, only two of them, ¶¶ f–g, supra p. 4, reference any specific conduct occurring <u>after</u> May 11, 2016. A third, ¶ a, supra, does not mention any specific dates in correlation with the activity.[5]

The remaining alleged misappropriations, ¶¶ b–d, supra, each specifically and irrefutably reference conduct that solely occurred <u>prior to</u> May 11, 2016.

---

[5] While Defendants believe these five product data sheets were created prior to May 11, 2016, that issue would require submission of evidence outside the pleadings and would therefore require conversion of that timing issue to summary judgment. Because the issue can be disposed of without regard for the timing issue, Defendants will not specifically address the timing portion of the product data sheets.

The Choline Chloride Trade Secret Memo that was allegedly distributed in 2015 (¶ b) did not occur during the time period when the DTSA applied, and therefore cannot support a claim under the DTSA as a matter of law and must be dismissed.

The business opportunity that was allegedly diverted in December 2015 by disclosure that occurred in a February 2016 memo (¶ c) is alleged to have occurred prior to the time period when the DTSA applied, and therefore cannot support a claim under the DTSA as a matter of law and must be dismissed.

The publication of a March 2016 brochure and use of the unrestricted AAR information about Hydrogen Peroxide Trade Secrets (¶ d) is alleged to have occurred prior to the time period when the DTSA applied, and therefore cannot support a claim under the DTSA as a matter of law and must be dismissed.

Misuse by disclosure to a friend and his company DCS without a nondisclosure agreement in March 2016 (¶ e) is alleged to have occurred prior to the time period when the DTSA applied, and therefore cannot support a claim under the DTSA as a matter of law and must be dismissed.

The only misappropriations that could possibly have occurred after the DTSA's May 11, 2016 effective date are ¶ a and ¶¶ f–g.  *See supra,* p. 4.

### III.    The Alleged Acts Which Occurred After the DTSA's Effective Date Are Not Misappropriation

The only remaining acts alleged which could constitute misappropriation (*i.e.,* ¶¶ a, f, g) are either pled as common law breach of fiduciary duty claims or are related to activities that are on their face not misappropriation of trade secrets.

### A. *The Product Data Sheets Do Not Disclose Trade Secrets*

Plaintiff alleges misappropriation of trade secrets through six product data sheets. *See supra,* p. 4 ¶ a.

Each product data sheet is alleged to be marketing by Chem Advances. *See* Exhs. 1 – 6.[6]

The DTSA only creates a private cause of action on behalf of "an owner of a trade secret". 18 U.S.C. § 1836(b)(1).   Thus, in order to recover under the DTSA, the information allegedly misappropriated must be a "trade secret," which the DTSA defines as:

> all forms and types of financial, business, scientific, technical, economic, or engineering information, … whether tangible or intangible, and whether or how stored, compiled, or memorialized … if--**(A)** the owner thereof has taken reasonable measures to keep such information secret; and **(B)** the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means.

18 U.S.C. §1839(3).

Contrary to Plaintiff's contention, the product data sheets do not disclose any alleged trade secrets.

Plaintiff describes his trade secrets as "chemical processes and technologies" and as the "chemical processes and technologies enumerated and described in Paragraph 25". Doc. 1 at ¶¶ 25-26. Plaintiff further describes AAR's business purpose as including efforts to market, produce, distribute, license, and sell its products. Products cannot be marketed, distributed, licensed, or sold without some description of the products, its uses, packaging, handling, physical characteristics, and potential safety issues. However, such efforts may not, and in many times do

---

[6] While exhibits are not generally admissible in a motion to dismiss, an exception applies where, as here, defendant attaches documents to a motion to dismiss that are referred to in the plaintiff's complaint and are central to its claim. *Collins v. Morgan Stanley Dean Witter,* 224 F.3d 496, 498–99 (5th Cir. 2000) (internal quotations and citation omitted). Under such circumstances, the documents are considered part of the pleadings. *Id*. The product data sheets are referenced in at least ¶ 26 of the Complaint but were not attached. They are material to the claim because they reveal the actual content of what is alleged to have been misused.

not, include disclosure of "processes and technologies". That is also the case in this particular instance with the complained of data sheets—which are limited to general marketing information.  *See* Exhs. 1 – 6.

In order for the product data sheets to misappropriate trade secrets, they must contain at least some "chemical process" or "technology", as described by Plaintiff, related to one of the five alleged trade secrets in the Complaint at ¶25. Rather than disclose any chemical processes or technologies, the product data sheets provide general information on each product by way of a general product description, physical properties, uses or applications suggested, and safe handling or shipping procedures and precautions.  This information is no different than the general descriptions provided by Plaintiff in his publicly available Complaint filed in this lawsuit, and in what he describes as AAR's intended use for the products.

For instance, Plaintiff describes the Choline Chloride Trade Secrets as "<u>water soluble biopolymers chemically engineered</u> to <u>replace salt-based and other polymer-based clay control products</u>."  Doc. 1 at ¶25(a). In an almost identical description, the Clay Control 532C data sheet describes it as "a *water-soluble biopolymer chemically engineered* to perform as a superior clay control product *replacing salt-based and other polymer-based clay control products*." Exh. 1.

Plaintiff's Choline Chloride description continues and states that "they <u>inhibit water-hydration of swelling clays and prevent dispersion of clay solids</u>…" which is almost identical to the description in the Advanced ClayControl data sheet. Doc. 1 at ¶25(a) compared to Exh. 2 ("The Advanced ClayControl *inhibits water-hydration of swelling clays and prevents dispersion of clay solids*.").

The language describing the Hydrogen Peroxide Trade Secret and the description of the Breaker LT 105 Concentrate are also virtually identical. Doc 1 at ¶25(b) ("<u>hydrogen peroxide</u>

enhancers to improve control in the breaking of polymer viscosifying agents.") compared to Exh. 3 ("Breaker LT 105 Concentrate functions as a **hydrogen peroxide "enhancer" to improve control in the breaking of polymer viscosifying agents**.").

The remaining information discussed in each product data sheet includes: (1) physical properties such as flash point, viscosity, density, pH, and solubility; (2) suggested applications such as pipelines, flowlines, drilling and fracking; (3) instructions for use; (4) packaging information; and (5) safe usage and handling procedures. *See* Exhs. 1 – 6. None of the data sheets contain any formulas, processes, or technologies.

Information in the data sheet that the Plaintiff himself uses to generically describe the properties and attributes of his alleged secret process and technology is not something Plaintiff alleges he has taken reasonable steps to keep secret, as would be required under the DTSA definition of trade secret in 18 U.S.C. §1839(3)(A).  Additionally, the fact that the information was made generally known by the Plaintiff means that it does not derive independent economic value from not being known as is required to be a trade secret under 18 U.S.C. §1839(3)(B).  The information contained in the Product Data Sheets, therefore, does not satisfy either of the required elements of being a trade secret and the information disclosed is not a trade secret even making every reasonable inference about the content in Plaintiff's favor.

Plaintiff alleges the trade secrets as "chemical processes and technologies" not as marketing statements, general descriptions, physical properties, safe handling instructions, and various suggested applications.  The product data sheets are limited to information that does not disclose either a chemical process or a chemical technology. As a result, the product data sheets do not disclose any trade secrets and Defendants cannot be liable for misappropriation under the DTSA related to the product data sheets.

### B. *The Remaining Alleged Misappropriations Are Not Disclosure or Use of Trade Secrets*

The only remaining alleged misappropriations not already shown to be defective under the DTSA are the Clean Water Proposal presentation (supra p. 4 at ¶ f) and efforts to sell products to Balchem, a third party (supra p. 4 at ¶ g). As set out below, Plaintiff's allegations seek to recover for state law torts such as usurpation of business opportunity and not misappropriation of trade secret under the DTSA.

### 1.   <u>The Clean Water Presentation Is Not A Misappropriation</u>

While the alleged misappropriation related to the Clean Water Proposal did occur within the effective time period of the DTSA, it does not state a claim for relief under the DTSA for several reasons.  *See supra,* p. 4 ¶ f.

First, the allegation about the Clean Water Proposal, like several of the product data sheets does not make any reference to a particular trade secret in the Complaint. Without an alleged trade secret that was used or disclosed in the presentation, there can be no claim under the DTSA, which requires proof that that the defendant misappropriated a trade secret. 18 U.S.C. §1836(b)(3).

Further, misappropriation of time and general resources is also not actionable under the DTSA, where a trade secret is required to be some sort of "financial, business, scientific, technical, economic, or engineering <u>information</u>". 18 U.S.C. §1839(3) (emphasis added). Employee time does not fall within any of these categories.

Even irrespective of the failure to link this allegation to a specific trade secret, there is no DTSA claim for allegedly "drain(ing) resources from AAR". The Clean Water Proposal allegation does not state a claim under the DTSA and must be dismissed.

### 2. Usurping A Corporate Opportunity Is Not A Misappropriation

The final alleged misappropriation relates to Defendants' usurping an AAR opportunity with Balchem. *See supra,* p. 4 ¶ g. While the allegation is a little unclear, it discusses some combination of offering Choline Chloride Trade Secrets products for sale to a third party, Balchem, and entering into a supply chain agreement after May 11, 2016. As with the above Clean Water Proposal, usurpation of business opportunity is not a misappropriation of a trade secret as a matter of law. *See* 18 U.S.C. §1839(3).

As noted above, Plaintiff alleges that part of AAR's purpose was to sell the products which necessarily requires public disclosure of the product itself and general marketing information making the product and that information not protectable, as a matter of law, as a trade secret[7] under 18 U.S.C. §1839(3)(A) ("the owner thereof has taken reasonable measures to keep such information secret"). The product itself is also not "financial, business, scientific, technical, economic, or engineering information" that is even protectable by the DTSA. *See* 18 U.S.C. §1839(3). Applying all reasonable inferences in Plaintiff's favor, usurping an AAR opportunity by selling products to Balchem does not state a cause of action under the DTSA.

### IV.   The DTSA Claims Fail Because No Improper Means is Alleged

Plaintiff is not a member of AAR but is suing individually and, improperly, on behalf of AAR, derivatively.[8] Defendants are AAR, two individuals who own the LLC's (Tarrytown Ventures, LP and Cypress Technologies, LLC) which are the other two members of AAR, and another company owned indirectly by the individual Defendants (ChemAdvances). As a result of

---

[7] In the same way, in selling Coca-Cola, a grocery store is providing the actual Coca-Cola liquid product and general ingredients and nutritional information, which in no way is a misuse, disclosure, or misappropriation of Coca-Cola's trade secret formula.

[8] Sapienza is not directly a member of AAR, his limited liability company, Visibly Green, LLC, is a member of AAR. *See Infra*, Pg. 18; *and see* Defendant's Pocket Brief.

this reality, irrespective of the above analysis, it is clear that no Defendant conducted any activity that rises to the level of a misappropriation under the DTSA.

In particular, Plaintiff's allegation of misappropriation, as that term is defined within the DTSA, is insufficient to state a claim on which relief can be granted because no information was ever identified or marked as being subject to protection by Sapienza or AAR, and there has been no assertion of improper means, use, or disclosure by the remaining Defendants, especially after the effective date of the DTSA.

As to the misappropriation element, Plaintiff alleges in "COUNT ONE – THE DEFEND TRADE SECRETS ACT (18 U.S.C. §1836)…", that "Trahan, Davis, and CA willfully, maliciously, and in bad faith, misappropriated the Sapienza/AAR Trade Secrets by (a) acquiring them by improper means; [and] (b) disclosing and using them without express or implied consent." Doc. 1 at ¶ 65. Plaintiff, therefore, contends that Defendants' alleges misappropriation falls under § 1839(5)(A) (acquisition by improper means) and § 1839(5)(B) (disclosure or use without express or implied consent). While no specific portion of § 1839(5)(B) is referenced, each allows liability to attach for "disclosure and use of another without express or implied consent" and can, for argument's sake, support a claim when properly pled.

Even in the event this Court views all other elements as appropriately pled, the DTSA claim still fails for lack of allegations sufficient to show a "misappropriation."

### A. There is No Allegation of Acquisition by "Improper Means" Against Trahan and Davis

Even applying the broadest possible definition to "improper means", Plaintiff failed to allege acquisition of a trade secret by Trahan and Davis through any improper means. *See* § 1839(6)(A). As management, (*see* Doc. 1 at ¶ 15), Trahan and Davis are entitled to access to all business information, trade secret or otherwise, made available to them in that capacity. They are also authorized to receive confidential information as owners of the entity members of AAR.

13

Defendants' acquisition of all business information from AAR was by "other lawful means." *See* § 1839(6)(B).   Acquisition of an alleged secret by a manager is not, and cannot be, acquisition by improper means.

### B.  There is No Allegation of Acquisition by "Improper Means" Against Chem Advances

Chem Advances is a company owned by two entities which are each owned by Trahan and Davis. Doc. 1 at ¶¶ 19-20. Trahan and Davis are managers of Chem Advances. *Id.* at ¶¶ 20 and 22-23. Chem Advances is the entity through which each of the alleged bad acts occurred. *See* Doc. 1 at ¶¶ 29-42.  Trahan and Davis represented Chem Advances to Sapienza as "a sales and marketing part or division of AAR formed for that purpose and for its benefit." Doc. 1 at ¶ 23.

Plaintiff does not allege Chem Advances obtained information by theft, bribery, misrepresentation, breach or inducement of a breach of a duty to maintain secrecy, or espionage. Instead, lawful means were utilized to the extent any information exchanged hands between AAR and Chem Advances, through Trahan or Davis. Trahan and Davis, as AAR managers in charge of marketing, are lawfully entitled to enter into agreements with companies to outsource the marketing of AAR's products. This requires disclosure of information, such as the above discussed product data sheets, sufficient to allow the third party marketer to sell the products, irrespective of whether the entity is part of AAR or separate from it. One member's unhappiness over the way the inter-party agreements are set up does not give rise to a misappropriation claim. The fact that Chem Advances obtained the information as the company in charge of marketing the products does not give rise to a claim for improper acquisition of any information.

### C.  There is No Allegation of Use or Disclosure Without Consent

Plaintiff's Complaint does not sufficiently plead any of the three alternative methods by which misappropriation can be proven under 18 U.S.C. § 1839(5)(B).  Plaintiff's Complaint claims the AAR Employee Handbook establishes that information was used without consent.

However, Plaintiff's pleading does not identify particular documents, papers, research, emails, or evidence of development or testing which have been marked, identified, or otherwise protected as trade secret information; nor has Plaintiff made any specific allegation about which information in the development, research, testing, or formulating process was marked or otherwise identified as secret or confidential until, allegedly, August 2016.

The alleged duty Plaintiff complains was violated is a duty of confidence arising pursuant to the AAR Employee Handbook.  Marking or identification of trade secrets is an express requirement under the duties set out in the Employee Handbook, and it was Plaintiff's duty to ensure that any information he believed should be protected was "marked or verbally identified". *See* Exh. 7 at 21-22[9]. Plaintiff's managerial duties are allegedly related to the science and day-to-day operations while Trahan and Davis were merely marketers and financiers. Doc. 1 at ¶14. The only instance pled in which Plaintiff attempted to identify a trade secret in some manner was his retroactive attempt to limit access to the company's file sharing database on <u>August 5, 2016</u>, when Plaintiff's "discovery [of AAR being a distinct entity from Chem Advances] also compelled Sapienza to attempt to protect AAR's trade secrets by limiting their access on Egnyte and Projecturf, cloud-based file sharing and project management software, respectively, at AAR." Doc. 1 at ¶ 39.

By Plaintiff's own pleading, Trahan and Davis, were merely marketing and selling the products created, as their management roles contemplated, based on the information Plaintiff and the development team produced. *See e.g.,* Doc. 1 at ¶ 14. Despite his duty to do so under the Handbook, Plaintiff does not allege that he identified, marked, or tried to otherwise protect any

---

[9] This Exhibit is admissible in this motion to dismiss, as Plaintiff refers to the Employee Handbook repeatedly in his Complaint and relies on it as a basis for several of his claims, including the trade secret claims.  *See* Doc. 1 at ¶¶ 15, 27, 28, 33, 35, and 74.  Therefore, the Handbook is central and material to Plaintiff's claims, should be considered part of the pleadings, and is admissible as an exhibit herein.  *See Collins,* 224 F.3d at 498–99.

of the information until August 2016, at the earliest, which is after each alleged misappropriation.

Because he has not alleged marking or identification of the specific information, and a resulting duty to protect the information, Plaintiff has not stated a claim for which Defendants would be liable under § 1836(b)(1) for misappropriation, as that term is defined in §1839(5)(B). *See M.C. Dean, Inc. v. City of Miami Beach, Florida*, 16-21731-CIV, 2016 WL 4179807, at *7 (S.D. Fla. Aug. 8, 02016) (company's information disclosed to City without effort to protect the information and without a duty to maintain secrecy could not be misappropriated under the DTSA). Defendants also cannot be liable for misappropriation of information which they had a right to use. *See HealthBanc Int'l, LLC v. Synergy Worldwide, Inc.*, 216CV00135JNPPMW, 2016 WL 5255163, at *6 (D. Utah Sept. 22, 2016) (holding licensee/assignee of secrets could not misappropriate secrets through use or disclosure where the plaintiff was unhappy with the way the licensee was using the secret and paying royalties).

Because the Complaint (Doc. 1) lacks any viable allegation of "improper means" or "disclosure or use of a trade secret of another without express or implied consent", as those terms are defined in the plain language of the statute, the Complaint lacks the essential element of a misappropriation and does not state a claim on which relief can be granted as to the DTSA; therefore, those claims must be dismissed. *See* § 1839(5)(B).

## V.    Plaintiff's Remaining State Claims Must be Dismissed

"If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. §1447(c). Generally, where dismissal of the claims occurs before trial, any remaining state-law claims should be dismissed or remanded, as appropriate. *Parker & Parsley Pet. Co. v. Dresser Indus.*, 972 F.2d 580, 585 (5th Cir. 1992) ("Our general rule is to dismiss state claims when the federal claims to which they are pendent

are dismissed").  "[W]hen the single federal-law claim is eliminated at an 'early stage' of the litigation, the district court has 'a powerful reason to choose not to continue to exercise jurisdiction.'" *Id.* at 585 (internal citations omitted). In such cases, values of judicial economy, convenience, fairness, and comity "will point toward declining to exercise jurisdiction over the remaining state-law claims." *Id.* at 586-87 (citing *Carnegie–Mellon Univ. v. Cohill,* 484 U.S. 343, 350 & n. 7 (1988)).

Plaintiff's only claim giving rise to federal subject matter jurisdiction is the DTSA claim, which, as discussed, must be dismissed because it cannot support a finding of liability on face of the Complaint. Though Plaintiff has pled under the Declaratory Judgments Act, the Act "does not confer subject matter jurisdiction on a federal court where none otherwise exists." *Lawson v. Callahan*, 111 F.3d 403, 405 (Fifth Cir. 1997). There is thus no actual controversy allowing for invocation of the Declaratory Judgment Act. 28 U.S.C. § 2201.

No answers have been filed in this matter. There has been no discovery and only one status conference, which was held before any Defendant was ever actually served with process. Defendants know of no reason why any viable state law claims cannot be brought in state court, and there is no other reason, compelling or otherwise, for retention of the remaining state law claims.

Upon dismissal of the DTSA claim, any remaining state law claims must be dismissed without prejudice.

## VI.    Procedural Defects Provide Independent and Alternative Bases For Dismissal

### A. *Sapienza Lacks Standing to Sue on AAR's Behalf and Individually*

Rule 17 of the Federal Rules of Civil Procedure requires that appropriate parties be named in all suits. The rule applies state law to determinations of whether an unincorporated entity, such as a limited liability company, has capacity to sue. Under Louisiana law, "An

unincorporated association may assert a claim in its name on behalf of its members <u>if one or more members of the unincorporated association have standing to assert a claim in their own right</u>, the interests the unincorporated association seeks to protect are germane to its purposes, and neither the claim asserted nor the relief requested requires the participation of a member." La. Stat. Ann. § 12:507 (emphasis added).

In this case, despite his allegation, Plaintiff is *not* a member of AAR and has no standing to bring a claim on AAR's behalf. *See Darrow v. Southdown, Inc.*, 574 F.2d 1333, 1337 (5th Cir. 1978) (holding debenture holder with no ownership interest in a corporation lacks standing to sue derivatively on the company's behalf). AAR's members are Tarrytown Ventures, LP; Cypress Technologies, LLC; and Visibly Green, LLC, none of whom are named as parties to this lawsuit. Without one or more of AAR's members named as the party bringing the suit derivatively, the case must be dismissed unless the error is corrected after notice of the error is given. *See* Fed. R. Civ. P. 17(a)(3).  If any claims are brought against the other members of AAR, then those entity members must be adequately named, or otherwise the Complaint must be re-pled to represent which parties are liable and in what capacity. Trahan and Davis can have no individual liability as "members" of AAR.[10]

Additionally, and by his own admission, Plaintiff individually lacks standing to assert a cause of action for trade secret misappropriation under the DTSA. 18 U.S.C. § 1836(b)(1) (creating a cause of action for the "**owner** of a trade secret"). Defendants dispute that Plaintiff is the creator, author, or inventor of any trade secret; however, to the extent any alleged trade secrets are allegedly owned by Plaintiff based upon their creation "separately before the

---

[10] If the Court determines that jurisdiction does exist to retain the lawsuit, Defendants do not object to leave being given, with a reasonable deadline, to amend the Complaint to correctly name all real parties in interest and clarify the basis of liability against each.

formation of AAR," such allegation of ownership directly contradicts Plaintiff's allegation that, in exchange for his membership position, "Sapienza contributed his previously and separately researched, invented, developed, tested, and owned trade secrets before the formation of AAR." Doc. 1 at ¶¶ 16 and 25(a-c).  According to his own pleading, Plaintiff gave these alleged trade secrets to AAR as consideration for his membership in AAR, and thus cannot assert a claim as owner of the same.

### B. Plaintiffs Did Not Follow Federal Rule 23.1

Rule 23.1 applies to all claims where "one or more shareholders or members of a corporation or an unincorporated association bring a derivative action to enforce a right that the corporation or association may properly assert but has failed to enforce." Fed. R. Civ. P. 23.1(a). Rule 23.1 mandates that all such complaints "must be verified" and "must … (3) state with particularity any effort by the plaintiff to obtain the desired action from the directors or comparable authority and, if necessary, from the shareholders and members; and, the reasons for not obtaining the action or not making the effort." Fed. R. Civ. P. 23.1(b).

The complaint is not properly verified.[11] That failure alone violates Rule 23.1. The verification requirement exists to prevent baseless suits. *Surowitz v. Hilton Hotels Corp.*, 383 U.S. 363, 371 (1966).  The unverified complaint should be dismissed with leave to amend or a requirement that the procedural deficiency be cured within a specified time period. *See In re Extreme Networks, Inc.*, 573 F.Supp.2d 1228, 1237-38 (N.D. Cal. 2008) (citing various authorities).

Additionally, the Complaint seeks relief for the corporation in the form of damages and judicial dissolution, and does not explain the "effort by the plaintiff to obtain the desired action

---

[11] A verification was emailed to Defendants on the day the Complaint was filed but there is not any record of that verification being actually filed with the Court in compliance with Rule 23.1.

from the directors" or "the reasons for not obtaining the action or not making the effort" as Rule 23.1 requires. Prior to filing the Complaint, the parties engaged in discussions concerning alternative manners and methods of winding up the company's affairs and selling the remaining assets to pay the remaining debts. However, Plaintiff was unhappy with the manner and structure of payments to AAR from Chem Advances' sales of products developed by AAR.  *See* Doc. 6 at pp. 12 and 17.  Plaintiff filed suit approximately 24 hours after a detailed exchange that in no way indicated an impasse, and request a TRO and immediate emergency relief.  The timing of the Complaint, as well as the failure to explain the negotiations or verify the Complaint, are evidence of Plaintiff's true intent in filing this suit, which is to leverage his negotiating position and drain company resources.  This is contrary to the purpose of filing a derivative suit. The true underlying dispute in this case is between members of a Louisiana limited liability company related to how to properly manage, or wind up, the business; and all of the above, considered together, indicates that Plaintiff's true objective for this legal proceeding is not to protect trade secrets.

## CONCLUSION

Based on the foregoing, it is clear that Plaintiff's claim brought pursuant to the Defend Trade Secrets Act ("DTSA") fails to state a claim on which relief can be granted, and must therefore be dismissed on that ground.  Upon dismissal of the DTSA claim, no other claims in Plaintiff's Complaint (Doc. 1) create federal question jurisdiction.  Accordingly, Plaintiff's entire case must be dismissed.

Dated: February 20, 2017

Respectfully submitted,

ONEBANE LAW FIRM (APC)

BY: */s/* Steven Lanza
Steven C. Lanza (LA #19668)
lanza@onebane.com
Post Office Box 3507
Lafayette, LA  70502-3507
Suite 300, 1200 Camellia Blvd.
Lafayette, LA  70508
(337) 237-2660

ATTORNEYS FOR DAVID O. TRAHAN AND
BEN D. DAVIS


AND:

**MATTHEWS, LAWSON, MCCUTCHEON & JOSEPH
PLLC**

/s/ Terry B. Joseph
Terry Joseph
Texas Bar No. 11029500
tjoseph@matthewsfirm.com
David M. Lodholz
Texas Bar No. 24070158
dlodholz@matthewsfirm.com
2000 Bering Dr., Suite 700
Houston, Texas 77057
Telephone: (713) 355-4200
Facsimile:  (713) 355-9689

ATTORNEYS FOR DAVID O. TRAHAN,
BEN D. DAVIS, CHEM ADVANCES, LLC AND
ADVANCED APPLIED RESEARCH, LLC

## <u>CERTIFICATE</u>

I HEREBY CERTIFY that I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send notice of electronic filing to all known counsel of record who are participants.

I further certify that I mailed the foregoing document and the notice of electronic filing by first-class mail to the following non-CM/ECF participants:  None Known.

Lafayette, Louisiana, this <u>20th</u> day of February, 2017.

s/       Steven C. Lanza
STEVEN C. LANZA
